Argued November 19, 1931; affirmed January 5, 1932

# BURKE MACHINERY CO. *v.* COPENHAGEN ET AL.

(6 P. (2d) 886)

*Alfred P. Dobson,* of Portland, for appellants.

*Ralph B. Herzog,* of Portland (Herzog, Fulop & Kenin, of Portland, on the brief), for respondent.

ROSSMAN, J. The amended complaint, after alleging that the defendants were partners at the time when the transactions occurred out of which the alleged indebtedness arose, averred that between January 1, 1918, and November 1, 1928, the plaintiff sold to the defendants material, performed for them labor and loaned to them sums of money, and that as a result of these transactions the defendants became in-

debted to the plaintiff in the sum of $11,424.75. The complaint, after crediting the defendants with the sum of $5,806.42 paid on account, demanded judgment for the balance, $5,618.33. The answer, after denying all of the above, alleged that between October 31, 1918, and January 13, 1923, "Copenhagen Bros. Co. was a corporation * *· * that all of said transactions resulting in said debts and credits set out in said bill of particulars, with the exception of certain of the items shown on sheet A-8, represented dealings or transactions between the plaintiff and Copenhagen Bros. Co., a corporation." The answer also alleged payment in full of all indebtedness incurred. The reply denied all of the new matter in the answer.

■ The findings of fact recited: "From a preponderance of the evidence in the above entitled case, it appears that the defendants herein were at all times mentioned in plaintiff's amended complaint a copartnership · doing business · under the · name of Copenhagen Bros." The cause having been tried ·by the judge without a jury, this finding has the effect of a verdict (section 2-503, Oregon Code 1930) and cannot be· disregarded unless this court is of the opinion that the. finding is not supported by any competent, sub-stantial evidence: *Carstens Packing Co. v. Gross,* 131 Or. 580 (283 P. 20) ; *Tracy v. Thun,* 125 Or. 323 (267 P. 398) ; *Warren v. Dinwoodie,* 88 Or. 342 (171 P. 1175) ; *Thompson v. ·Sargent,* 66 Or. 384 (134 P. 7). The finding being protected by the aforementioned rule, our duty is restricted to the task of determining whether it is supported by any competent, substantial evidence as distinguished from the task of weighing the evidence.

Practically all of the transactions between the parties occurred between October 31, 1918, and January

1, 1923. May 24, 1918, C. A. Hartley, C. J. Cooley and B. Friedman filed with the corporation commissioner of this state articles of incorporation of a company entitled Pacific Construction Company. Sometime afterwards these defendants secured control of that corporation and on November 21, 1919, filed with the corporation commissioner supplementary articles of incorporation whereby the name of that company was changed to Copenhagen Bros. Co. · The defendant Henry Copenhagen conceded that prior to the time that he. and the other defendant, Otto Copenhagen, took charge of the Pacific Construction Company the two brothers were partners engaged in business under the firm name of Copenhagen Bros. Henry Copenhagen also. testified that prior to 1918 while he and his brother were handling "one little logging job over in Vancouver, we had dealings" with the plaintiff, and that "we used to deal as a partnership" with the plaintiff. J. J. Burke, the president of the plaintiff, testified that the Burke Machinery Company had begun to do. business with the defendants as partners before the creation of the entity entitled Copenhagen Bros. Co. .He testified that he had never heard of the Pacific Construction Company until Henry Copenhagen mentioned it as a witness in the present trial. In 1922 he saw some papers which contained the name, Copenhagen Bros. Co., and testified that apart from the information therein conveyed he had no knowledge whatever of the existence of that corporation. Henry Copenhagen testified, "I don't recall ever mentioning to them (the plaintiff) that we did incorporate." Burke testified that in all of the transactions mentioned in the complaint he looked to these two defendants for payment and believed they were partners. He testified that neither of the brothers told him in express

language of their relationship as partners. We quote from his testimony: "I don't remember that they ever did come out and tell me so. I knew they were doing business as Copenhagen Bros. I knew they had been partners for many years. I had been in connection with them for a good many years, several years, wherein I knew they were." There was received in evidence a letter, dated July 25, 1922, addressed to the plaintiff, written upon stationery containing the printed letterhead, "Copenhagen Brothers" and signed, "Henry Copenhagen." The letterhead made no mention of a corporate existence. The plaintiff also introduced in evidence a document entitled an assignment, dated November 11, 1922, the opening sentence of which recites, "Know all men by these presents, that Copenhagen Brothers, a corporation, and Copenhagen brothers, a copartnership * * *." It is signed thus: "Copenhagen Brothers, a corporation, by Henry Copenhagen, President; Copenhagen Brothers, a copartnership, by Henry Copenhagen." Another document also received in evidence, entitled "Rental Agreement," dated July 1, 1922, recited an agreement between the plaintiff and "Copenhagen Bros." and bore the signature, "Copenhagen Bros., by Henry Copenhagen." Another document received in evidence is entitled "Power of Attorney," anr recites: "Know all men by these presents: That Copenhagen Bros., a corporation, and Copenhagen Bros., a copartnership, * * *." It is signed: "Copenhagen Bros., a corporation, by Henry Copenhagen, President; Copenhagen Bros., a copartnership, by Henry Copenhagen." The transactions between the parties were many in number. The plaintiff offered in evidence numerous invoices upon different billheads in which the items were charged to Copenhagen Bros.

However, in many instances "Co." appears after the words Copenhagen Brothers. Mr. Burke testified that these statements were prepared by employees in the office of the plaintiff and that no significance was attached to the form of the name. Checks for various sums advanced by the plaintiff were frequently drawn to the order of Henry Copenhagen or of Otto Copenhagen. The plaintiff testified that this procedure was adopted as an accommodation to the firm at the request of the partnership. There is no direct testimony that the partnership was ever dissolved.

The foregoing is the principal evidence upon which the plaintiff relies to support its judgment. The following principles of law help to sustain the judgment or determine the weight and the effect of the evidence reviewed above. A partnership is never presumed and, therefore, one who alleges such a relationship assumes the burden of proof: *H. H. Worden Co. v. Beals*, 120 Or. 66 (250 P. 375); *Page-Dressler Co. v. Meader*, 118 Or. 359 (244 P. 308); *Eilers Music House v. Reine*, 65 Or. 598 (133 P. 788). The law presumes that persons who are acting as copartners have entered into a contract of copartnership (subd. 29, § 9-807, Oregon Code 1930). Based upon the experience that conditions shown to have existed continue as long as it is usual for things of that nature to continue, the law presumes that when it is once shown that particular persons have formed a partnership they continue their relationship in that association until a dissolution is proved: *Ogden Packing & Provision Co. v. Wyatt*, 59 Utah 481 (204 P. 978, 22 A. L. R. 359); 20 R. C. L., Partnership, p. 849, § 54. Where no fixed term has been agreed upon for the duration of a partnership or where no term is fixed by the nature of the business,

and it is therefore a partnership at will, it continues until terminated: Rowley, Law of Partnership, § 573. The dissolution of a partnership requires affirmative action upon the part of the partners just as the formation of one does. An averment that the partnership has been dissolved requires proof the same as a charge that men have associated themselves together as partners: *Dawson v. Pogue and Nickell*, 18 Or. 94 (22 P. 637, 6 L. R. A. 176). The formation of a corporation by the members of a partnership does not necessarily effect a dissolution of the partnership nor transfer to it the partnership business. Both may exist simultaneously: *Pearce v. Sutherland*, 164 Fed. 609; *First National Bank of Wausau v. Conway*, 67 Wis. 210 (30 N. W. 215). A partnership, in the absence of statute to the contrary, may adopt any name which it chooses even though that name may suggest corporate existence: *Danton v. Mohler Barber School*, 88 Or. 164 (170 P. 288). If the members of a partnership cause the creation of a corporation without formal dissolution of the partnership and notice thereof to those who have been dealing with them, and if the corporation proceeds to deal with the old customers of the partnership in the same way as the latter had done, the persons comprising such partnership continue liable as partners where the change is insufficient to convey notice that a new ownership has supplanted the old: *Overlock v. Hazzard*, 12 Ariz. 142 (100 P. 447); Cook on Corporations (7th Ed.), § 243. From Fletcher, Cyclopedia of the Law of Corporations, § 363, we quote:

"Frequently a change from a partnership to a corporation is attended with such change of name and such other changes as not to require personal notice to persons dealing with the firm, of the organization of the corporation. But if there is no change of name,

or place of business, or other changes which might reasonably be presumed to impart notice, some kind of notice reasonably adapted for that purpose should be given. This is akin to the principle requiring notice in the case of dissolution of a partnership, as dissolution of the partnership usually results when the corporation is created, and is also similar to the rule requiring notice where there is a change in membership of a partnership, and a retiring partner seeks to be relieved from future debts of the partnership. If no notice is given the members of a firm cannot avoid their partnership liability. * * * The sufficiency of notice, and the question whether personal notice is reasonably required, must be determined from the circumstances of each case. It would seem that the mere addition of the word 'incorporated' to the partnership sign on its storehouse is not sufficient to charge an employee of the partnership with notice. * * * It has been held also that published notices by parties who previously conducted their business as a partnership which referred to the formation of a corporation, are not competent evidence where they do not set forth the dissolution of the firm, and there is no proof that they are published as the acts and declarations of the partners and that there had been an actual dissolution.''

The addition of the abbreviation "Co." to a business name is not notice that the partnership theretofore existing has been dissolved and that the business has been transferred to a corporation: *Ogden Packing & Provision Co. v. Wyatt*, supra; Fletcher, Cyclopedia of the Law of Corporations, § 362. From a note in 40 Am. St. Rep. 573, we quote:

''The liability of a partner may extend beyond the indebtedness existing at the dissolution and include indebtedness subsequently contracted in favor of persons relying on the partnership liability and who did not have any notice of its dissolution. Those who had dealt with the firm before dissolution are entitled to

hold all of the partners liable for debts contracted afterwards in good faith in the belief that the firm still continued and in reliance upon its assets and the personal responsibility of its members."

See also 20 R. C. L., p. 964, § 191.

Applying the above principles to the facts before us, it will be observed that Mr. Burke's testimony to the effect that he had extended credit to the defendants in their capacity as partners was reinforced by their admissions that they were partners during the time when these transactions occurred, as is evidenced by the instruments bearing their signatures as partners. Their signatures upon those documents constituted admissions of their partnership relationship. Further, Henry Copenhagen conceded that he and his codefendant were partners before they created their corporation, and that in their partnership capacity they had dealt with the plaintiff. That relationship could reasonably be presumed to continue during the period of the questioned transactions because the presumption was aided by the admissions contained in the documents just mentioned. Next, Henry Copenhagen, as will be observed from the testimony previously reviewed, conceded that he had never notified the plaintiff of a dissolution of the partnership; in fact, no one testified that the partnership had ever been dissolved. The addition of the word "Company" to the business name certainly could not be deemed notice of the dissolution of the partnership and the transfer of its business to the corporation. A partnership is nothing more than the individuals who have associated themselves together in the conduct of business, but a corporation is an entity separate and apart from the associates. The partnership business, therefore, could

not be transferred to the corporation by the mere creation of the latter and the dissolution of the former. Yet no one testified to anything more than the creation of the corporation. In fact, the testimony that the corporation ever did business is so slight that it can be described as meager. The conclusion is not only possible, but is almost demanded that, even after the corporation had been formed, both it and the partnership operated alongside of one another. There was no change in the location of the company's place of business, in the character of its business, nor in the personnel of its owners. The slight evidence which indicates that the plaintiff was aware of the existence of the corporation certainly does not demand a finding that the plaintiff accepted it as its debtor. It could not be compelled, without its consent, to do business with the corporation in lieu of the partnership.

█ Having taken the above view of the matter, it necessarily follows that in our opinion competent, substantial evidence supports the finding of the circuit court. We, therefore, conclude that the judgment of the circuit court must be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.